Parker C. J.,
in giving the opinion of the Court, said in substance, that they saw no reason for questioning the constitutionality of the statute providing for the appointment of guardians to spendthrifts. We apprehend that the government have always a right to protect the property of citizens for the benefit of themselves and their families, and of the community. Here the people have deputed their power to the judge of probate, and the appointing of a guardian by *410 nim is not taking away the spendthrift’s property, but preserving it to him for his own use. If the constitutionality of the provision is at all questionable, it must be on the ground, that in the appointment of a guardian the spendthrift has not the benefit of a trial by jury ; but that is not a process in which he is deprived of such benefit, for he may appeal to the Supreme Court, where a trial by jury may be ordered.-
The next question is, whether the interposition of the guardian in appointing an appraiser and receiving seisin of the land, was conformable to the statute which provides that these things shall be done by the creditor or his attorney. The guardian is not technically an attorney, but if the ward cannot in such case act by his guardian, he cannot obtain payment of his debt. He ought not to be deprived of this power in consequence of having a guardian, and it appears that the power given to a guardian of a spendthrift is like that given >o guardians of idiots, &c., who are empowered o “ sue for and recover ” all just debts due to their wards. Under this authority the guardian may carry on a suit to execution, and receive seisin of land extended upon, and by operation of law the seisin is the seisin of the ward himself. Or the guardian might in such case be held to be an attorney.
The last objection on the part of the tenant, that the several parcels of land were appraised in one gross estimate, presents a question of more difficulty, but the Court think the objection cannot be sustained. The question is obviously óf no importance, unless the debtor has a right, where several parcels are extended on, to redeem one parcel without redeeming the rest ; and we think it is pretty evident, that by a fair construction of the statute he has no such right. He would otherwise redeem a favorite parcel, leaving the rest to satisfy the debt The object of the statut was not that the land should be taken in payment of the debt, but that the levy on it might compel the debtor to pay the debt. If he could redeem a separate parcel, it would tend to diminish the chance of the creditor’s getting payment in money, which generally he prefers. Nor should the debtor dc allowed to avail himself of the fluctuation in the value of *411 real estate, so as to redeem a parcel which has risen in value and leave to the creditor one which has fallen. The statute intends that the full amount of the debt shall be tendered to the creditor, in order that the debtor may be restored to his land.1 *There might be a case of a farm purchased in distinct lots at several times. Instead of going to the expense of a survey, the appraisers might describe the several parcels from the deeds,[2] and it might not be proper or advisable to appraise them separately, as their value might be increased by taking them in connexion with one another.[3]

Judgment according to the verdict.

 See Hammatt v. Bassett, post, 564.

 See, Atherton v. Jones, 1 N. Hamp. R. 363, in note.

See Foss v. Stickney, 5 Greenl. 390,